# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Civil Action No. _____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **COMPLAINT** |
| REESE PFEIFFER; JEANNE PFEIFFER; | ) |
| MICHAEL FRUEN; JEREMY MARTINEAU; | ) **DEMAND FOR JURY TRIAL** |
| FRUEN & PFEIFFER, LLP; M. FRUEN | ) |
| PROPERTIES, LLC, | ) |
| | ) |
| Defendants. | ) |

## INTRODUCTION

The United States of America brings this suit against Defendants Reese Pfeiffer, Jeanne Pfeiffer, Michael Fruen, Jeremy Martineau, Fruen & Pfeiffer, LLP ("F&P") and M. Fruen Properties ("MFP") (collectively, "Defendants") for violating the Fair Housing Act, as amended, 42 U.S.C. §§ 3601, *et seq.* (the "Fair Housing Act").

Defendant Reese Pfeiffer ("Pfeiffer") sexually harassed female tenants in the Minneapolis, Minnesota metro area by subjecting them to hostile housing environments and requests for sexual favors in exchange for rental benefits. Pfeiffer made repeated and unwelcome sexual comments to these tenants, touched their bodies without consent, requested sexual favors from them, and offered them rental benefits, such as excusing late or unpaid rent or utilities in exchange for sexual favors. Pfeiffer also commented on tenants' looks and body parts, asked personal questions about their relationship status,

made unwelcome sexual advances, discussed sexual topics without consent, and entered their homes under the pretense of collecting rent to solicit sexual favors. Pfeiffer took advantage of female tenants with limited housing options, using their circumstances and his position to seek to extract sex and sexual favors from them because they needed housing. Fruen, Martineau, Jeanne Pfeiffer, F&P, and MFP are vicariously liable for Pfeiffer's discriminatory conduct, because Pfeiffer acted as their agent when he sexually harassed tenants at properties in which they had an ownership interest.

In support of this Complaint, the United States of America alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought by the United States to enforce the provisions of Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), as amended, 42 U.S.C. §§ 3601, *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345; and 42 U.S.C. § 3614(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the claims alleged herein occurred in the District of Minnesota, and Defendants reside or do business in the District of Minnesota.

## FACTUAL ALLEGATIONS

4. Defendants Reese Pfeiffer and Jeanne Pfeiffer, husband and wife, reside in Plymouth, Minnesota.

5. Defendant Jeremy Martineau resides in Crystal, Minnesota.

6. Defendant Michael Fruen resides in Plymouth, Minnesota.

7. Defendant F&P is a Minnesota limited liability partnership formed on or about September 22, 2016, with its business address in Plymouth, MN. F&P is co-owned by Defendants Reese Pfeiffer and Michael Fruen.

8. Defendant MFP is a Minnesota limited liability company, formed on or about August 14, 2017, with its business address in Plymouth, MN. MFP is wholly owned by Defendant Michael Fruen.

## DEFENDANT REESE PFEIFFER

9. Since at least 2010, Defendant Reese Pfeiffer served as the property manager for numerous single-family and multi-family rental properties in and around Minneapolis and its surrounding suburbs, owned and/or co-owned by one or more of the following: Reese Pfeiffer, Jeanne Pfeiffer, Michael Fruen, Jeremy Martineau, F&P, and MFP.

10. These properties include, but are not limited to, the following addresses: 9840 Nicollet Ave. S., Bloomington, MN 55420 ("9840 Nicollet"); 4001 Welcome Ave. N., Robbinsdale, MN 55422 ("4001 Welcome"); 2755 Douglas Dr. N., Crystal, MN 55422 ("2755 Douglas"); 4848 Maryland Ave. N., Crystal, MN 55428 ("4848 Maryland"); 2551 Douglas Dr. N., Golden Valley, MN 55422 ("2551 Douglas"); and 3237 Douglas Dr. N., Crystal, MN 55422 ("3237 Douglas") (collectively, the "Subject Properties").

11. The rental homes at the Subject Properties described above are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

12. At all times relevant to this action, Defendant Reese Pfeiffer performed management duties at the Subject Properties including, but not limited to, approving new

tenant applications, setting rates for rent and security deposits, collecting rent, receiving maintenance requests, making repairs, communicating with tenants regarding utility bills and late rental payments, evicting tenants, and preparing vacant units for new tenants.

13. At all times relevant to this action, Defendants Michael Fruen, Jeremy Martineau, Jeanne Pfeiffer, F&P and/or MFP engaged Reese Pfeiffer to act as their agent to manage the Subject Properties and provided him with the actual or apparent authority to receive applications for tenancy; to accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for the Subject Properties.

14. On repeated occasions from at least 2014, and continuing through at least 2019, Defendant Reese Pfeiffer has subjected multiple female tenants of the Subject Properties to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment. Such conduct has included, but has not been limited to, the following categories of severe, pervasive and unwelcome sexual harassment:

    a. Coercing or pressuring female tenants to engage in sexual acts to obtain or keep their housing;

    b. Making unwelcome sexual comments, propositions, and sexual advances to female tenants;

    c. Subjecting female tenants to unwelcome sexual contact, including but not limited to, touching female tenants' breasts and genitals;

4

  d. Offering to grant tangible housing benefits—such as providing a rental opportunity or overlooking or excusing late or unpaid rent or utilities—in exchange for sex or sex acts;

  e. Taking adverse housing actions, such as eviction, or threatening to take such actions, against female tenants who objected to and/or refused sexual advances;

  f. Expressing a preference for renting to single female tenants; and

  g. Making intrusive and at times unannounced visits to female tenants' homes to further his sexual advances.

15. For example, in 2017, during an in-person meeting to rent an apartment at 9840 Nicollet, Pfeiffer sexually harassed a prospective tenant by touching the prospective tenant's private areas including her inner thigh and breasts. Pfeiffer also inquired whether she would be living with a man, and offered to pay her for sexual favors. After the tenant began renting in July 2017 through approximately March 2019, Pfeiffer repeatedly sexually harassed her by touching and/or kissing her private areas during in-person meetings to collect rent. In exchange for this touching, Pfeiffer paid or offered to pay her money when she could not pay rent, provided flexibility on late payments, and did not charge late fees.

16. In another example, in 2017, Pfeiffer sexually harassed a prospective tenant by commenting on and touching her private areas, including her breasts and buttocks, while promising to rent a single family home to her. After several encounters involving this sexual contact which spanned several months, Pfeiffer rented her a less desirable duplex

located at 4001 Welcome. After she began renting the unit at 4001 Welcome, Pfeiffer continued to inappropriately touch the tenant during in-person meetings and in exchange, provided rental benefits, such as continued tenancy, waiving late fees, allowing extra time for payment of rent or utilities, or providing repairs. The tenant complained to Defendant Martineau about Pfeiffer's conduct but Martineau failed to take any action to stop or otherwise address Pfeiffer's conduct.

17. In another example, from 2014 to 2019, Pfeiffer sexually harassed a female tenant at 2755 Douglas. During their in-person meeting to rent the property in 2014, Pfeiffer asked the tenant if she strips or dances on the side. Pfeiffer pulled himself toward her, began rubbing her leg up and down and reached his hand between her legs and touched her private area, and told her: "You have a nice ass. If I help you, you may need to help me. I may want to fuck you from time to time." Pfeiffer routinely sexually harassed the tenant from 2014 to 2019 by making unannounced visits to the home, making unwanted sexual contact of her private areas, and making unwelcome suggestive comments such as: "Now that I've done you a favor, you have to do me a favor." The "favors" that Pfeiffer offered included flexibility with past due rent by the tenant. The tenant declined Pfeiffer's requests to have sexual intercourse, including on one occasion when she was 7.5 months pregnant. In March 2020, Pfeiffer initiated eviction proceedings against her and she subsequently moved from the property.

18. Another tenant, who has resided at 4848 Maryland since July 2018, video recorded Pfeiffer continuously touching and rubbing her upper inner thigh during an encounter in his vehicle, when he was completing a form she needed for her application

seeking Emergency County Assistance for her initial security deposit and rent. After the tenant later fell behind on her rent, Pfeiffer suggested to her that she could pay it off with sexual favors, stating: "I know a way you can catch up on your rent, but you just won't give in." The tenant declined and was served an eviction notice fourteen days later. She was not evicted at that time and remains a tenant at 4848 Maryland. This tenant is a named plaintiff in a private lawsuit involving similar allegations, *Brown et al. v. Pfeiffer et al.*, 19-cv-3132 (WMW/KMM) (D. Minn.).

19. In another example, from approximately May 2018 through April 2019, Pfeiffer made unwelcome sexual comments and offered housing benefits in exchange for sex to a former tenant of a triplex unit of 3237 Douglas. During their initial meeting, Pfeiffer stared at her chest and asked her: "How big are those?" After the tenant fell behind on rent, Pfeiffer told her that he should get something in return for not charging her late fees and allowing her children's father to live with them without charging more rent. On one occasion when the tenant met Pfeiffer in his van to get a renter's rebate form, Pfeiffer put his hand on her inner thigh. She advised him that she would not exchange sex for rent. The tenant avoided Pfeiffer for a month until he told her she had to leave, and the tenant subsequently moved out.

20. In another example, from approximately January 2017 through December 2019, Pfeiffer made unwelcome sexual comments and offered housing benefits in exchange for sex to another tenant of 9840 Nicollet. When the tenant met Pfeiffer at the apartment building to pay her security deposit in January 2017, Pfeiffer asked her how he would get his rent money and asked her if she dances, strips, or does "anything else on the

7

side." During the course of her tenancy, Pfeiffer made additional unwelcome sexual comments and propositions including asking her to give him a massage on multiple occasions, and telling her that if she gave him a massage he would suck on her breasts and pay her $200. This tenant is a named plaintiff in a private lawsuit involving similar allegations, *Brown et al. v. Pfeiffer et al.*, 19-cv-3132 (WMW/KMM) (D. Minn.).

21. The experiences of these six women described above in paragraphs 15-20 were not the only instances of Pfeiffer's sexual harassment. Rather, these instances were part of Pfeiffer's pattern or practice of illegal sexual harassment of multiple female tenants.

22. Defendant Reese Pfeiffer's discriminatory housing practices, as described above, occurred within the scope of his agency relationship with Defendants Michael Fruen, Jeremy Martineau, Jeanne Pfeiffer, F&P and MFP, or were aided by the existence of that agency relationship.

**DEFENDANT JEREMY MARTINEAU**

23. Since approximately February 2008, Defendant Jeremy Martineau served as Reese Pfeiffer's co-owner and business partner of 4001 Welcome, a rental duplex in Robbinsdale, MN.

24. Martineau periodically provides repairs for properties that Pfeiffer is responsible for managing. Martineau has also served eviction notices relating to properties managed by Pfeiffer.

25. At all times relevant to the action, Martineau engaged Pfeiffer to act as his agent to manage 4001 Welcome, as well as other properties owned by Martineau, and provided him with the actual or apparent authority to receive applications for tenancy; to

8

accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rent and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for those Subject Properties. Pfeiffer received a percentage of rental receipts from 4001 Welcome as compensation for managing the property.

26. Pfeiffer's discriminatory housing practices, as described in paragraph 16 above, occurred while Martineau co-owned 4001 Welcome, and occurred within the scope of Pfeiffer's agency relationship with Martineau, or were aided by the existence of that agency relationship.

## **DEFENDANT MICHAEL FRUEN**

27. In or around June 1999, Defendant Michael Fruen acquired one of the Subject Properties, 9840 Nicollet, an 11-unit apartment building in Bloomington, MN, and owned it in his individual capacity, until he conveyed it to MFP by quitclaim deed on November 28, 2017.

28. In eviction proceedings occurring before MFP's creation, including for 9840 Nicollet, Fruen identified himself as the owner of these properties through a sole proprietorship and issued a power of attorney to Pfeiffer to handle eviction proceedings on his behalf.

29. Fruen is frequently named on leases or eviction proceedings as an individual landlord or owner for properties Pfeiffer manages, even in some circumstances when the property is owned by F&P or MFP.

30. In or around March 2013, Fruen and Pfeiffer acquired another one of the Subject Properties, 2755 Douglas, a 3-bedroom townhome in a 6-unit condominium complex called Crystalbrook Villas in Crystal, MN, and owned in their individual capacities until they conveyed it by quitclaim deed to F&P on or about October 3, 2017.

31. Fruen and Pfeiffer acquired Subject Property 2551 Douglas, a two-unit rental duplex in Golden Valley, MN in or around June 2010, and owned it in their individual capacities until they conveyed it by quitclaim deed to F&P.

32. During the course of his individual ownership of the Subject Properties described in paragraphs 27-31, Defendant Michael Fruen engaged Defendant Reese Pfeiffer as his agent to manage these properties, as well as other properties owned by Fruen, and provided him with the actual or apparent authority to receive applications for tenancy; to accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for those Subject Properties.

33. At least some of Pfeiffer's discriminatory housing practices, as described above in paragraphs 15, 17, and 20 above, occurred while Fruen owned or co-owned the properties described therein, and occurred within the scope of Pfeiffer's agency relationship with Fruen, or were aided by the existence of that agency relationship.

## DEFENDANT JEANNE PFEIFFER

34. Reese Pfeiffer and Jeanne Pfeiffer jointly own a rental triplex located at 3237 Douglas Dr. N., Crystal, MN 55422, a Subject Property, which they acquired in approximately 1998.

35. Reese and Jeanne Pfeiffer own at least four additional rental properties, including a four-unit apartment building in Minneapolis, MN, two duplexes in Robbinsdale, MN and Golden Valley, MN, and a single family home in Crystal, MN.

36. In 2010, Reese and Jeanne Pfeiffer filed for Chapter 7 bankruptcy, and disclosed 3237 Douglas as a "rental property" owned as joint tenants with right of survivorship. In 2014, Reese and Jeanne Pfeiffer co-signed a quitclaim deed for 3237 Douglas, transferring it from "Reese L. Pfeiffer and A. Jeanne Pfeiffer, husband and wife" to "Reese L. Pfeiffer and A. Jeanne Pfeiffer." Jeanne Pfeiffer has co-signed at least 15 mortgages relating to 3237 Douglas.

37. During the duration of their joint ownership, Reese Pfeiffer has acted as the property manager for their jointly owned properties. Jeanne Pfeiffer arranged for Heather Martineau, Defendant Jeremy Martineau's wife, to come to the Pfeiffers' home and provide bookkeeping services related to Reese Pfeiffer's management of rental properties. Jeanne Pfeiffer also communicated directly with the Metro Housing and Redevelopment Authority regarding rent owned by the tenant described in paragraph 18.

38. During the course of her individual ownership of the Subject Property described in paragraph 34, Defendant Jeanne Pfeiffer engaged Defendant Reese Pfeiffer to act as her agent to manage these properties, as well as other properties owned by Jeanne

11

Pfeiffer, and provided him with the actual or apparent authority to receive applications for tenancy; to accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for those subject properties.

39. Reese Pfeiffer's discriminatory housing practices, as described in paragraph 19 above, occurred while Jeanne Pfeiffer co-owned 3237 Douglas, and occurred within the scope of Reese Pfeiffer's agency relationship with Defendant Jeanne Pfeiffer, or were aided by the existence of that agency relationship.

## **DEFENDANT F&P**

40. Defendant F&P is a real estate and/or property management company that owns and/or manages at least 17 rental properties in the northwestern suburbs of Minneapolis. These properties are predominately duplexes, townhomes, and single family homes in Golden Valley, Crystal, and Robbinsdale, MN.

41. Pfeiffer and Fruen jointly owned multiple rental properties that were later transferred to F&P after its creation in 2016.

42. F&P owns following Subject Properties: 2551 Douglas, 2755 Douglas, and 4848 Maryland.

43. During the course of its ownership of the Subject Properties described in paragraph 42, F&P engaged Pfeiffer as its agent to manage these properties, as well as other properties owned by F&P, and provided him with the actual or apparent authority to

receive applications for tenancy; to accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for those subject properties.

44. At least some of Pfeiffer's discriminatory housing practices, as described above in paragraphs 17 and 18, occurred while F&P co-owned the properties discussed therein, and occurred within the scope of Pfeiffer's agency relationship with Defendant F&P, or were aided by the existence of that agency relationship.

## **DEFENDANT MFP**

45. Defendant MFP currently owns Subject Property 9840 Nicollet Ave. S.

46. During the course of its ownership of the Subject Property described in paragraph 45, MFP engaged Pfeiffer as its agent to manage the property, as well as other properties owned by MFP, and provided him with the actual or apparent authority to receive applications for tenancy; to accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for the properties.

47. At least some of Pfeiffer's discriminatory housing practices, as described above in paragraphs 15 and 20, occurred while MFP owned 9840 Nicollet, and occurred

within the scope of Pfeiffer's agency relationship with Defendant MFP, or were aided by the existence of that agency relationship.

48. The conduct as described in this Complaint caused female tenants to suffer physical harm, fear, anxiety, and emotional distress, and interfered with their ability to secure and maintain rental housing for themselves and their families.

49. The conduct as described in this Complaint was intentional, willful, and/or taken in reckless disregard of the rights of others.

## CAUSE OF ACTION

50. By the actions and statements described above, Defendants have:

   a. Denied dwellings or otherwise made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

   b. Discriminated in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

   c. Made statements with respect to the rental of dwellings that indicate a preference, limitation, or discrimination based on sex, in violation of 42 U.S.C. § 3604(c); and

   d. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by Section 804 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

51. Defendants' conduct constitutes:

    a. A pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, and

    b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, which denial raises an issue of general public importance.

52. Female tenants and persons associated with them have been injured by Defendants' discriminatory conduct. Such persons are aggrieved persons as defined in 42 U.S.C. § 3602(i) and have suffered damages as a result of Defendants' conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an order that:

A. Declares that Defendants' discriminatory practices violate the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*;

B. Declares that Defendants have engaged in a pattern or practice of discrimination in violation of the Fair Housing Act, or have denied rights guaranteed under the Fair Housing Act to a group of persons, which denial raises an issue of general public importance;

C. Enjoins Defendants, their agents, employees, and successors, and all other persons in the active concert or participation with them from:

    i. Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental of a dwelling;

  ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act;

  iii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Defendants' victims of past unlawful practices to the position they would have been in but for the discriminatory conduct; and

  iv. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of Defendants' unlawful practices;

D. Orders Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable all aggrieved persons to the position they would have been in but for the discriminatory conduct;

E. Awards monetary damages to each person aggrieved by Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B);

F. Assesses civil penalties against Defendants in order to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

G.  Awards such additional relief as the interests of justice may require.

Dated: September 16, 2020

                                     Respectfully submitted,

WILLIAM P. BARR
Attorney General

| | |
|---|---|
| ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division | ERICA H. MacDONALD<br>United States Attorney<br>District of Minnesota |
| SAMEENA SHINA MAJEED<br>Chief<br>TIMOTHY MORAN<br>Deputy Chief<br>Housing & Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Penn. Avenue NW<br>Northwest Building, 7th Floor<br>Washington, D.C. 20530 | /s/Bahram Samie<br>BAHRAM SAMIE (#392645)<br>ANN BILDTSEN (#271494)<br>Assistant United States Attorneys<br>United States Attorney's Office<br>District of Minnesota<br>600 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415<br>Phone: (612) 664-5600<br>Fax: (612) 664-5788<br>Email: Bahram.Samie@usdoj.gov<br>       Ann.Bildtsen@usdoj.gov<br><br>Attorneys for Plaintiff<br>United States of America |