UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| United States of America, | Case No. 20-cv-1974 (WMW/KMM) |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT** |
| Reese Pfeiffer et al., | |
| Defendants. | |

This matter is before the Court on Defendants Michael Fruen and M. Fruen Properties, LLC's (the Fruen Defendants) motion to dismiss and for a more definite statement. (Dkt. 24.) For the reasons addressed below, the Court denies the motion.

## BACKGROUND

Plaintiff United States of America commenced this lawsuit against Defendants Reese Pfeiffer, Jeanne Pfeiffer, Michael Fruen, Jeremy Martineau, Fruen & Pfeiffer, LLP (F&P) and M. Fruen Properties, LLC (MFP) (collectively, Defendants) alleging violations of the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq.* Defendant Michael Fruen resides in Plymouth, Minnesota. Defendant MFP is a Minnesota limited liability company engaged in the business of real estate and property management with its principal place of business in Plymouth, Minnesota. MFP is wholly owned by Defendant Michael Fruen.

Reese Pfeiffer served as the property manager for numerous single-family and multi-family rental properties in and around Minneapolis, Minnesota, that were owned or co-owned by one of more of the Defendants. These properties include, but are not limited

to, the following addresses: 9840 Nicollet Avenue South, Bloomington, Minnesota 55420 (Nicollet Avenue Property); and 2755 Douglas Drive North, Crystal, Minnesota 55422 (2755 Douglas Drive Property) (collectively, the Subject Properties).

The Defendants, at all times relevant to this action, employed Reese Pfeiffer to manage the Subject Properties. Pfeiffer had the authority to receive applications for tenancy; to accept or reject tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to enter tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the cost of rent, fees or security deposits; and to evict tenants or otherwise enforce lease provisions for the Subject Properties.

The complaint alleges that on repeated occasions from 2014 through 2019, Reese Pfeiffer subjected multiple female tenants of the Subject Properties to sexual harassment. The specific allegations include, but are not limited to: coercing or pressuring female tenants to engage in sexual acts to obtain or keep their housing; making unwelcome sexual comments, propositions and sexual advances to female tenants; subjecting female tenants to unwelcome sexual contact; offering to exchange housing benefits for sex; evicting tenants who refused sexual advances; expressing a preference to rent to single female tenants; and making unannounced visits to female tenants' homes to further sexual advances. The complaint lists multiple examples of Reese Pfeiffer's conduct and alleges that these actions are a part of a pattern or practice of illegal sexual harassment against female tenants, in violation of the Fair Housing Act.

As relevant to the Fruen Defendants' pending motion to dismiss, the complaint alleges that the Fruen Defendants are vicariously liable for the pattern and practice of

sexual harassment caused by Reese Pfeiffer. Three of the many sexual harassment allegations described in the complaint occurred on the Fruen Defendants' properties. Two of these allegations involve tenants at the Nicollet Avenue Property and one involved a tenant at the 2755 Douglas Drive Property.

The complaint alleges that the incidents described in the complaint are not the only instances of Reese Pfeiffer's sexual harassment. Rather, "these instances were part of [Reese] Pfeiffer's pattern or practice of illegal sexual harassment of multiple female tenants."

The Fruen Defendants move to dismiss the claims against them, arguing that the Court lacks subject-matter jurisdiction and that the United States fails to state a claim upon which relief can be granted. In the alternative, if the Court denies the motion to dismiss, the Fruen Defendants seek an order for the United States to provide a more definite statement of the legal assertions made against each individual Defendant.

## ANALYSIS

The Court first addresses Defendants' motion to dismiss the claims against them for lack of subject-matter jurisdiction and failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.

When deciding a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court "must distinguish between a 'facial attack' and a 'factual attack.' " *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). A facial attack challenges the sufficiency of a plaintiff's pleadings and requires the district court to determine whether

the pleadings allege sufficient facts to support subject-matter jurisdiction. *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). In doing so, a court considers the pleadings only, and the nonmoving party receives the same protections that it would receive when defending a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Osborn*, 918 F.2d at 729 n.6. By contrast, a defendant's factual attack challenges the existence of subject-matter jurisdiction. *Branson Label*, 793 F.3d at 914–15. When ruling on a factual attack, the district court considers matters outside the pleadings, and the nonmoving party proceeds without "the benefit of [Rule] 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729 n.6. The Fruen Defendants assert a facial challenge to the Court's subject-matter jurisdiction, contending that the three alleged incidents of sexual harassment over six years are not sufficient to plausibly plead a "pattern or practice" of sexual harassment in violation of the Fair Housing Act.

A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

And legal conclusions couched as factual allegations may be disregarded by the district court. *See Iqbal*, 556 U.S. at 678.

## I. Subject-Matter Jurisdiction under the Fair Housing Act

Because subject-matter jurisdiction is a threshold issue, the Court addresses the Fruen Defendants' Rule 12(b)(1) arguments first.

The Fruen Defendants contend that three instances of alleged misconduct over a period of six years does not rise to the level of a "pattern or practice," which is necessary to invoke jurisdiction under the Fair Housing Act. 42 U.S.C. § 3614(a). The United States counters that the Court has jurisdiction over this case under the Fair Housing Act because the complaint plausibly pleads a "pattern or practice" of discrimination. *Id.*

As relevant here, the Fair Housing Act provides:

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in *a pattern or practice* of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of *general public importance*, the Attorney General may commence a civil action in any appropriate United States district court.

*Id.* (emphasis added). "There need not be an actual pattern or practice of resistance or an actual denial that raises an issue of general public importance. The only requirement is that the Attorney General [has] *reasonable cause* to believe that such conditions exist." *United States v. Pelzer Realty Co.*, 484 F.2d 438, 445 (5th Cir. 1973). Accordingly, the Attorney General is authorized to file suit under the Fair Housing Act under either of two scenarios: (1) when the Attorney General has reasonable cause to believe that there is a

"pattern or practice" of housing discrimination or (2) when the Attorney General has reasonable cause to believe that there is discrimination that raises an issue of "general public importance." *Id.*

Sexual harassment is a form of discrimination based on sex. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Sexual harassment is actionable under the Fair Housing Act when it creates "a hostile housing environment" or involves " 'quid pro quo' sexual harassment." *See Quigley v. Winter*, 598 F.3d 938, 946–47 (8th Cir. 2010). A defendant creates a "hostile housing environment" by subjecting a tenant "to unwelcome sexual harassment, and the harassment was sufficiently severe or pervasive so as to interfere with or deprive [the tenant] of her right to use or enjoy her home." *Id.* Quid pro quo sexual harassment "occurs when housing benefits are explicitly or implicitly conditioned on sexual favors." *Id.* at 947 (internal quotation marks omitted).

### A. Pattern or Practice

The parties primarily dispute whether the United States plausibly pleads a pattern or practice of discrimination.

The Attorney General may commence a civil action under the Fair Housing Act when the Attorney General "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice" of housing discrimination. 42 U.S.C. § 3614(a). To plausibly plead a "pattern or practice" of discrimination, the United States must allege "that any discriminatory act by the defendants was not an isolated or accidental departure from otherwise nondiscriminatory practices." *Pelzer Realty*, 484 F.2d at 445. For a court to determine what qualifies as a pattern or practice, "no mathematical formula is workable,

nor was any intended. Each case must turn on its own facts." *United States v. W. Peachtree Tenth Corp.*, 437 F.2d 221, 227 (5th Cir. 1971).

The Fruen Defendants argue that the complaint alleges against them only three "incidents" of misconduct over a period of six years. But this argument shrouds the length and severity of each incident. Each alleged incident involved a lengthy tenancy during which Reese Pfeiffer allegedly *repeatedly* subjected multiple tenants to sexual harassment.

First, as to the Nicollet Avenue Property, the complaint alleges that Reese Pfeiffer sexually harassed a prospective tenant by touching the tenant's private areas, including her inner thigh and breasts. Reese Pfeiffer asked if the tenant would be living with a man and "offered to pay her for sexual favors." Reese Pfeiffer repeatedly sexually harassed this tenant from when she began renting in July 2017 through approximately March 2019, the complaint alleges. In exchange for sexual acts, Reese Pfeiffer "paid or offered to pay her money when she could not pay rent, provided flexibility on late payments, and did not charge late fees."

Second, the complaint also alleges that Reese Pfeiffer sexually harassed another tenant at the Nicollet Avenue Property from January 2017 through December 2019. Reese Pfeiffer allegedly made unwelcome sexual comments and offered housing benefits in exchange for sex to this female tenant. While discussing the security-deposit payment, Reese Pfeiffer asked this tenant if she dances, strips, or does "anything else on the side." During the course of this tenant's tenancy, Reese Pfeiffer allegedly repeatedly made sexual comments and propositions, including asking her to give him a massage. Reese Pfeiffer

allegedly stated that he would pay this tenant $200 dollars for a massage if the massage also involved a sexual act.[1]

Third, at the 2755 Douglas Drive Property, from 2014 to 2019, Reese Pfeiffer allegedly sexually harassed a female tenant by asking her if she "strips or dances on the side," rubbing her leg up and down, and touching her private area. Reese Pfeiffer routinely sexually harassed this tenant by making unannounced visits to her residence, making unwanted sexual contact, and making vulgar and unwelcome requests for sexual favors in exchange for housing benefits. After this tenant repeatedly declined Reese Pfeiffer's requests for sexual intercourse, Reese Pfeiffer evicted her from the 2755 Douglas Drive Property.

It is disingenuous for the Fruen Defendants to label these allegations as three isolated incidents of misconduct when each tenant was subjected to repeated sexual harassment over the course of years. The United States does not allege three isolated incidents of sexual harassment against the Fruen Defendants. Rather, the United States alleges a multitude of incidents of sexual harassment arising from the experiences of three individual female tenants. Moreover, the complaint suggests that these are only representative examples, not the full extent of the alleged pattern or practice of discrimination. Accordingly, based on the facts alleged in the complaint, the United States plausibly alleges facts establishing that the Attorney General has reasonable cause to

---

[1] This tenant is a named plaintiff in a seperate lawsuit involving similar allegations. *See Brown v. Pfeiffer*, No. 19-cv-3132, Dkt. 86 (WMW/KMM) (D. Minn. Mar. 25, 2020).

8

believe that Reese Pfeiffer's actions demonstrate a "pattern or practice" of discriminatory conduct.

The Fruen Defendants argue that the allegations of only three women in the complaint are not sufficient to establish a "pattern or practice." This argument also is unavailing. There is no minimum number of victims that the United States must allege to establish a "pattern or practice" of discrimination. *United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012) (concluding that four credible victims is sufficient to establish a pattern or practice of sexual harassment); *see also United States v. Big D Enters., Inc.*, 184 F.3d 924, 931 (8th Cir. 1999) (holding that the United States had met its burden of demonstrating a pattern or practice at trial when it presented testimony from three victims of housing discrimination). To establish a pattern or practice, "no mathematical formula is workable, nor was any intended. Each case must turn on its own facts." *Peachtree*, 437 F.2d at 227 (concluding that evidence of two aggrieved individuals was sufficient to demonstrate a "pattern or practice" of discrimination).

The Fruen Defendants also argue that the United States fails to allege large-scale, system-wide discrimination. This argument fails to apply the proper legal standard. In making this argument, the Fruen Defendants rely on two Title VII employment discrimination cases: *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847 (D. Minn. 1993), and *E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059 (C.D. Ill. 1998). In *Jenson*, the district court held that the defendants created a hostile work environment because sexual harassment was the "standard operating procedure." 824 F. Supp. at 888. Similarly, the district court in *Mitsubishi Motor* observed that "pattern or practice cases

target large scale, system-wide discriminatory practices and their effects, rather than simply intentional wrongs." 990 F. Supp. at 1076 (internal quotation marks omitted). However, when evaluated in context, this observation in *Mitsubishi Motor* involved the district court distinguishing individual discrimination actions from group-based "pattern or practice" actions. Neither *Jenson* nor *Mitsubishi Motor*, both Title VII employment discrimination cases, alters the legal standards that govern the Fair Housing Act.

Title VII cases differ from Fair Housing Act claims in important ways. For example, employment discrimination cases place a much greater weight on statistical evidence, *see, e.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977), whereas in Fair Housing Act discrimination litigation "no mathematical formula is workable" and each case "must turn on its own facts." *Peachtree*, 437 F.2d at 227. The United States is not required to allege or offer statistical evidence, as the Fruen Defendants contend. Rather, the United States must allege facts from which the Attorney General could reasonably believe a "pattern or practice" of discrimination exists. The United States has done so here.

Accordingly, based on the allegations in the complaint, the United States plausibly alleges facts establishing that the Attorney General could reasonably believe that Reese Pfeiffer's actions rose to the level of a "pattern or practice" of discrimination.

### B. General Public Importance

The United States also argues that it plausibly alleges facts establishing that the alleged sexual harassment raises an issue of "general public importance." 42 U.S.C. § 3614(a).

The Attorney General may commence a civil action when there is reasonable cause to believe that a group of persons have been denied rights guaranteed by the Fair Housing Act and "such denial raises an issue of general public importance." *Id.* Although there is a circuit split as to the degree of deference courts should give the Attorney General when determining what constitutes "general public importance," even under the least-deferential standard, it is clear that routine sexual harassment of women as a condition of obtaining or maintaining housing is an issue of "general public importance." *Compare United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 125 n.14 (5th Cir. 1973) (holding that "the Attorney General must have a wide discretion to determine when an issue of public importance justifying his intervention under" the Fair Housing Act is raised), *with United States v. Hunter*, 459 F.2d 205, 217 (4th Cir. 1972) (concluding that the Attorney General's determination of whether a case raises an issue of general public importance is subject to judicial review).[2]

Here, the United States alleges sexual harassment against multiple women at multiple properties over at least a six-year period, which plausibly pleads an issue of general public importance. *See Hurt*, 676 F.3d at 654 ("A defendant creates a hostile housing environment by subjecting a victim to unwelcome sexual harassment, and the harassment was sufficiently severe or pervasive so as to interfere with or deprive the victim of her right to use or enjoy her home." (internal quotation marks and brackets omitted)). Thus, the United States plausibly alleges facts that establish the Attorney General has

---

[2] The Eighth Circuit has not addressed this issue.

reasonable cause to believe the alleged sexual harassment deprives a group of persons rights guaranteed by the Fair Housing Act and that denial of those rights raises an issue of "general public importance." 42 U.S.C. § 3614(a).

In summary, the complaint plausibly alleges facts establishing that the Attorney General could reasonably believe that Reese Pfeiffer engaged in a "pattern or practice" of sexual harassment on the Fruen Defendants' properties. 42 U.S.C. § 3614(a). The United States also plausibly alleges facts establishing that the Attorney General could reasonably believe that Reese Pfeiffer's conduct raises an issue of "general public importance." *Id.* Accordingly, under either provision of 42 U.S.C. § 3614(a), the Court has subject-matter jurisdiction over the Fair Housing Act claims in this case. The Fruen Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied.

## II. Vicarious Liability under the Fair Housing Act

The Fruen Defendants argue that the allegations against them, even if accepted as true, are not actionable under traditional vicarious liability principles. The United States contends that the Fruen Defendants may be held vicariously liable for Reese Pfeiffer's actions under the Fair Housing Act. By allowing Reese Pfeiffer to serve as the Fruen Defendants' rental property manager, the United States argues, the Fruen Defendants enabled Reese Pfeiffer's sexual harassment by providing access to their properties and the female tenants who resided there.

The Fair Housing Act provides for vicarious liability. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003). "A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have

known of the conduct that resulted in a discriminatory housing practice, consistent with agency law." 24 C.F.R. § 100.7(b). Principals and employers are vicariously liable for the acts of their agents or employees "in the scope of their authority or employment" even if the principal or employer "did not authorize or did not know of the acts complained of." *Meyer*, 537 U.S. at 285–86 (internal quotation marks omitted).

The complaint alleges that Reese Pfeiffer was an agent for the Fruen Defendants, who authorized him to manage the rental properties that the Fruen Defendants owned. The complaint alleges that Reese Pfeiffer had the actual or apparent authority to receive applications for tenancy; accept or reject prospective tenants; bind tenants to landlord/tenant contracts by signing leases; use keys to access tenants' housing; collect rents and fees; make repairs in tenants' housing; adjust the amounts of rent, fees or security deposits; and evict tenants or otherwise enforce lease provisions.

In an effort to avoid vicarious liability, the Fruen Defendants argue that the complaint seeks to hold them liable for conduct that occurred on properties they do not own. But this argument is unavailing because the complaint clearly defines the scope of the Fruen Defendants' property ownership and asserts vicarious liability against the Fruen Defendants only for the incidents that occurred on the Fruen Defendants' properties. Accordingly, the complaint puts the Fruen Defendants on notice for which specific incidents that vicarious liability allegedly applies.

The Fruen Defendants next argue that "two subsequent principals cannot both be vicariously liable for the same conduct." Fruen individually owned the Nicollet Avenue Property from in or around June 1999 through November 2017, when he conveyed the

13

property to MFP. The complaint alleges that Reese Pfeiffer sexually harassed tenants at the Nicollet Avenue Property from January 2017 through December 2019. The Fruen Defendants contend that, because Fruen conveyed his property to MFP in November 2017, Fruen no longer can be held vicariously liable.

Because the complaint alleges that Reese Pfeiffer was Fruen's agent and acted within the scope of his employment from January 2017 through November 2017, the complaint plausibly alleges that Fruen is vicariously liable for Reese Pfeiffer's discriminatory practices during that period of time. *See Meyer*, 537 U.S. at 286. The complaint also plausibly alleges that MFP owned the Nicollet Avenue Property from November 2017 through December 2019 and that Reese Pfeiffer was MFP's agent acting within the scope of his employment. Therefore, the complaint plausibly alleges that MFP is vicariously liable for Reese Pfeiffer's discriminatory practices during that period of time. *See id.* Accordingly, the Court rejects the Fruen Defendants' argument that two subsequent principals cannot be held vicariously liable.[3]

The Fruen Defendants also argue that a three-year statute of limitations applies. There is no time limit on the United States's ability to obtain injunctive and declaratory relief under the Fair Housing Act. *Garcia v. Brockway*, 526 F.3d 456, 460 (9th Cir. 2008) ("The [Fair Housing Act] does not provide a statute of limitations for [Section 3614(a)] actions, and other courts have held that such actions seeking equitable relief are not subject

---

[3] If the Fruen Defendants' argument were legally valid, then bad actors could avoid vicarious liability by transferring their property to someone else. The Fruen Defendants cite no legal support for such a position.

to any time limit."). The United States, however, is subject to a three-year statute of limitations period for money damages, and that period begins to toll on the date in which the Attorney General could first have reasonably known of the material facts underlying the claim. 28 U.S.C. §§ 2415(b), 2416(c).

"A pattern or practice claim is based not solely on isolated incidents . . . but a continuing violation manifested in a number of incidents. Such a claim is timely as long as at least one of the incidents occurred during the limitations period." *Hurt*, 676 F.3d at 654 (internal quotation marks and citation omitted). Because the allegations in this case range from 2014 through 2020, this action is not barred by the statute of limitations. There is a three-year statute of limitations on money damages. But there is insufficient evidence in the record at this stage to determine when the statute of limitations started running. Until discovery is completed, the Court cannot determine when the Attorney General could have reasonably known of the material facts underlying this claim. 28 U.S.C. § 2416(c). For this reason, a determination of who may be liable for money damages is premature. Moreover, the United States may seek declaratory and injunctive relief because there is no statute of limitations with respect to these forms of relief. *See Garcia*, 526 F.3d at 460.

In summary, because the United States plausibly alleges that the Fruen Defendants are subject to vicarious liability under the Fair Housing Act, the Court denies the Fruen Defendants' motion to dismiss for a failure to state a claim.

### III. Partial Judgment as a Matter of Law

The Fruen Defendants seek judgment as a matter of law as to the two alleged victims referenced in the complaint who previously sued Reese Pfeiffer, F&P and the Fruen

15

Defendants asserting similar Fair Housing Act allegations. The United States contends that this request should be denied because those two victims are not a party to this lawsuit and the United States was not a party to the previous lawsuit.

If the Court considers matters beyond the pleadings, the motion must be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Before the Court can treat the Fruen Defendants' Rule 12 motion to dismiss as a Rule 56 motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The United States has not had an opportunity to conduct discovery or present arguments as to any of its allegations of sexual harassment. Even though the alleged incidents involving the two women are being litigated in another case, those two women are not parties to this case. The alleged harassment of these women is relevant to whether Reese Pfeiffer was engaged in a pattern or practice of discrimination. The United States must be "given a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). It would be unfairly prejudicial to the United States if the Court converted this motion into a Rule 56 motion *sua sponte* without giving the United States a reasonable opportunity to present arguments and evidence to substantiate its allegations.

Accordingly, the Fruen Defendants' motion is denied.

### IV. Motion for a More Definite Statement

The Fruen Defendants alternatively move for a more definite statement, pursuant to Fed. R. Civ. P. 12(e). Because the allegations are too vague, the Fruen Defendants argue, the complaint fails to give "fair notice to each Defendant of what issues are presented."

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). If sought, the "motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." *Id.* Such motions are largely disfavored, in part because extensive discovery is available in a federal civil proceeding. *See Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 644 (D. Minn. 1996). A Rule 12(e) motion provides a remedy for unintelligible pleadings, but it is not intended to address merely a lack of detail. *Id.* "Any attempt to use a Rule 12(e) motion for a more definite statement to tie the pleader down to a particular legal theory of the case will be rejected as contrary to the philosophy of the federal rules, which does not require the claimant to settle upon a theory of [the] case at the pleading stage." 5C Arthur R. Miller et al., *Federal Practice & Procedure* § 1377 (3d ed. April 2021 Update).

The Fruen Defendants argue that the complaint could be read to assert that the "Fruen Defendants are liable for harassment of women who were never their tenants and [committed] by someone who was not acting as their agent during the conduct alleged." The Fruen Defendants also contend that the complaint could be read as asserting that "a number of women were sexually harassed by the same individual, and the United States

intends to hold each principal liable for their share of liability." From these arguments, it is evident that the Fruen Defendants seek a more definite statement of the legal, not the factual, assertions in the complaint, for the purpose of limiting the United States to a particular legal theory, which is a disfavored course of action. *See Bryson v. Bank of N.Y.*, 584 F. Supp. 1306, 1319 (S.D.N.Y. 1984) ("A Rule 12(e) motion should not be used simply to ascertain a plaintiff's legal theories.").

Granting the Fruen Defendants' motion for a more definite statement is not warranted here. The complaint clearly lists which of the Subject Properties the Fruen Defendants owned. The complaint also expressly identifies the acts of tenant harassment alleged against the Fruen Defendants. The complaint is not "so vague or ambiguous that the [Fruen Defendants] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Moreover, a Rule 12(e) motion for a more definite statement may not be used to ascertain the United States's legal theories. *See Bryson*, 584 F. Supp. at 1319. Because a more definite statement is not warranted, the Court denies this aspect of the Fruen Defendants' motion.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the Fruen Defendants' motion to dismiss and for a more definite statement, (Dkt. 24), is **DENIED**.

Dated: June 21, 2021
s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge